E. GRADY JOLLY, Circuit Judge:
Given that the Supreme Court long ago determined that the Constitution protects a woman’s right to choose an abortion, the ultimate issue in this appeal is whether the State of Mississippi can impose a regulation that effectively will close its only abortion clinic. The State of Mississippi, however, argues that Mississippi citizens can obtain an abortion in Tennessee, Louisiana, or Alabama without imposing an undue burden upon Mississippi citizens in the exercise of their constitutional rights.
Today, we . follow the principle announced by the Supreme Court nearly fifty years before the right to an abortion was found in the penumbras of the Constitution and hold that Mississippi may not shift its obligation to respect the established constitutional rights of its citizens to another state. Such a proposal would not only place an undue burden on the exercise of the constitutional right, but would also disregard a state’s obligation under the principle of federalism — applicable to all fifty states — to accept the burden of the non-delegable duty of protecting the established federal constitutional rights of its own citizens.
*450 In April 2012, the Mississippi Legislature passed House Bill 1390 (“H.B. 1390” or “the Act”). Mississippi Governor Phil Bryant signed the Act, and it was scheduled to take effect on July 1, 2012. As relevant to this appeal, the admitting privileges provision of H.B. 1390 requires that “[a]ll physicians associated with the abortion facility must have admitting privileges at a local hospital and staff privileges to replace local hospital on-staff physicians.” Before the passage of H.B. 1390, Mississippi law required that abortion facilities have only a transfer agreement with a local hospital, a written agreement for backup care with a physician with admitting privileges, and at least one affiliated doctor with admitting privileges. Miss. Admin. Code 30-17-2635:2.5(B), (F).
The Jackson Women’s Health Organization (“JWHO”) operates the only licensed abortion clinic in Mississippi (“the Clinic”). Three doctors are affiliated with the Clinic: Dr. Willie Parker, Dr. Doe, and Dr. Roe.[1] Dr. Parker and Dr. Doe provide the majority of the abortion services, while Dr. Roe provides only “extremely limited abortion services.” Neither Dr. Parker nor Dr. Doe have admitting privileges at a local hospital, but Dr. Roe does.
The defendants, Mary Currier and Robert Smith (collectively, “the State”), are Mississippi officials. They appeal the district court’s entry of a preliminary injunction enjoining the enforcement of the admitting privileges provision of H.B. 1390. We AFFIRM the district court’s judgment entering the preliminary injunction, as herein MODIFIED to limit it, in this “unconstitutional as applied” appeal, to these parties and this case.
I.
Several days before H.B. 1390’s effective date, JWHO filed this suit in the federal district court. JWHO sought both a temporary restraining order and a preliminary injunction barring the enforcement of the admitting-privileges provision.[2] The district court granted the temporary restraining order. The district court also granted, in part, JWHO’s motion for preliminary injunction. Specifically, the district court allowed the State to enforce the admitting-privileges provision, thereby requiring JWHO’s doctors to seek admitting privileges. But the district court enjoined the State from imposing any civil or criminal penalties on JWHO for the continuing operation of the Clinic while its doctors sought the privileges.
Consistent with the district court’s order, Drs. Parker and Doe sought admitting privileges at seven of the Jackson-area hospitals, but no hospital was willing to grant either of the doctors these privileges.[3] The hospitals maintained this stance despite the doctors’ request that they reconsider. The State subsequently denied JWHO’s request for a waiver for Drs. Parker and Doe, found that the Clinic was not in compliance with H.B. 1390, and *451 sent JWHO an official notice of hearing for revocation of JWHO’s license to perform abortions.
In the light of this impending hearing, JWHO filed a second motion for a preliminary injunction. JWHO argued that, by closing the only clinic in Mississippi, the law would impose an undue burden on women’s right to choose abortions. The State responded that the law would not impose an undue burden because the Act would, at most, increase travel time and costs for women seeking an abortion. These women could travel to abortion clinics in other states that are not prohibitively far away. Taking the Jackson area as an example, the State pointed to abortion clinics in Baton Rouge, New Orleans, and Memphis that are no farther than three hours away. Because this increase in travel would only be an incidental burden on the right to an abortion, the State argued that H.B. 1390 was constitutional.
The district court granted the preliminary injunction. As a factual matter, the district court found that allowing enforcement of the Act would close the Clinic because JWHO could not comply with the Act. Moving to the legal analysis, the district court held that JWHO had demonstrated a substantial likelihood of success on the merits because the Act created an undue burden. Notwithstanding the other clinics that are within a few hours’ drive, the district court held that the proper analysis looked to the availability of abortions within the State of Mississippi. Seeing that the only clinic would be closed by enforcing the Act, the district court held that an undue burden would likely result.
Similarly, the district court held that JWHO had established a substantial threat of irreparable harm in the form of the impending closure of the Clinic. Finally, the district court held that the balance of harms cut in favor of JWHO as the preliminary injunction would merely maintain the status quo, and the court held that the injunction would not disserve the public interest because it would prevent constitutional deprivations. Having found the four factors of the preliminary injunction test satisfied, the district court enjoined the State from enforcing the admitting privileges provision.
The State then filed a Rule 52(b) motion to clarify. First, the State asked the district court to clarify whether its legal conclusion was that any regulation that would act to close the Clinic would be “per se unconstitutional.” The district court only addressed this argument insofar that it reiterated that the challenge was to the Act as-applied, and therefore was based on the facts before the court. Second, the State asked the district court to clarify a footnote in the original order which highlighted a lack of clarity in abortion jurisprudence related to the necessity of a challenged regulation. In its Rule 52(b) order, the district court reiterated that it did not undertake any necessity inquiry as it was not something raised by the parties, and that even if it did undertake a necessity inquiry, the Act would not be so medically necessary as to overcome the undue burden it established.
The State now appeals the granting of the preliminary injunction and the district court’s motion granting the State’s Rule 52(b) motion in part.
II.
We review a district court’s grant of a preliminary injunction for an abuse of discretion. Janvey v. Alguire, 647 F.3d 585, 591-92 (5th Cir.2011). “Although the district court may employ informal procedures and rely on generally inadmissible evidence, the record must nevertheless support the district court’s decision.” Sierra Club, Lone Star Chapter v. F.D.I.C., 992 F.2d 545, 551 (5th Cir.1993). In exam *452 ining the record, we review a district court’s findings of fact for clear error and its conclusions of law of de novo. Planned Parenthood Ass’n of Hidalgo Cnty. Tex., Inc. v. Suehs, 692 F.3d 343, 348 (5th Cir.2012).
To support the “extraordinary equitable remedy” of a preliminary injunction, the plaintiff must establish four elements: “(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.” Hoover v. Morales, 164 F.3d 221, 224 (5th Cir.1998).
The State argues principally that the district court erred in holding that JWHO had established a substantial likelihood of success on the merits. In this respect, the State questions one finding of fact and two conclusions of law of the district court’s order. We begin by touching on the factual issue before moving to the legal arguments.
III.
The district court found that the effect of the law would be to close the Clinic— the only licensed clinic in Mississippi. The State now contends that the district court erred because this fact is disputed, arguing that implementation of the law would not force the Clinic to close.
But we need not tarry long here because the State has waived this argument. All indications from the record are that this issue ultimately was not contested in the district court. See Pluet v. Frasier, 355 F.3d 381, 385 (5th Cir.2004) (“We will not disturb the district court’s judgment based upon an argument presented for the first time on appeal.”). The State did not present this argument in its response motion in opposition to JWHO’s motion for preliminary injunction, and the district court noted that “the State has essentially confirmed that it will revoke the Clinic’s license.” Additionally, this argument is nowhere to be found in the State’s opening brief; it is only in its reply brief that the State “disputes that it is a ‘foregone conclusion’ that enforcement of the admitting privileges requirement will close the Clinic.” See Edwards v. Johnson, 209 F.3d 772, 775 n. 1 (5th Cir.2000) (“[Plaintiff] does not argue in his initial brief on appeal that the district court erred in adopting the magistrate’s finding.... Therefore, any challenge to these findings has been abandoned on appeal.”). Moreover, in its opening brief, the State admits that “if enforced, the admitting privileges requirement would likely require JWHO, the only currently licensed abortion facility in Mississippi, to lose its license.” The State’s attempt to walk back this statement in the reply brief is too little, too late.[4]
*453 IV.
We now take up the State’s legal arguments that JWHO failed to demonstrate a substantial likelihood of success on the merits of its case. It is important to note at the outset that JWHO does not seek to have the Act declared unconstitutional for all intents and purposes; JWHO brings only an as-applied challenge to the Act. Consequently, to establish a substantial likelihood of success on the merits, JWHO must demonstrate that H.B. 1390, as applied against JWHO in this case on these facts, likely violates the Constitution.
It is also important to keep in mind that for more than forty years, it has been settled constitutional law that the Fourteenth Amendment protects a woman’s basic right to choose an abortion. Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Beyond this basic premise, however, the controversy seems to have no end as this basic right comes with layers of limitations. Accordingly, a woman’s right to an abortion can be regulated by a state consistent with that state’s interest in protecting potential life and the health of the mother. Planned Parenthood of S.E. Penn. v. Casey, 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion) (reaffirming the state’s “legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child”). The Supreme Court has held, however, that such state regulations may not impose an “undue burden” on the basic right to terminate a pregnancy by abortion prior to the fetus’s viability. Id. at 895, 112 S.Ct. 2791 (“[The challenged regulation] is an undue burden, and therefore invalid.”); see also id. at 877, 112 S.Ct. 2791 (“[A] statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman’s choice cannot be considered a permissible means of serving its legitimate ends.”). A law fails this standard, and is thus unconstitutional, “if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.” Gonzales v. Carhart, 550 U.S. 124, 156, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007) (quoting Casey, 505 U.S. at 878, 112 S.Ct. 2791). Laws that merely have “the incidental effect of making it more difficult or more expensive to procure an abortion” do not impose an undue burden and are thus constitutional. Casey, 505 U.S. at 874, 112 S.Ct. 2791. In addition to creating no undue burden, an abortion restriction must pass a rational basis test. Gonzales, 550 U.S. at 158, 127 S.Ct. 1610 (“Where it has a rational basis to act, and it does not impose an undue burden, the State may use its regulatory power to bar certain procedures and substitute others, all in furtherance of its legitimate interest in regulating the medical profession in order to promote respect for life, including life of the unborn.” (emphasis added)).
In addition to these Supreme Court precedents, we are guided by a recent opinion of our court determining the constitutionality of a similar Texas statute. Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott, 748 F.3d 583 (5th Cir.2014). In Abbott, we discussed the constitutionality of a Texas law that, among other things, required that a physician performing an abortion have admitting privileges at a hospital located within thirty miles of the site of the abortion. Id. at 587. We held that this requirement satisfied rational basis review. Id. at 594-95. We additionally held that the law did not impose an undue burden on a woman’s right to an abortion because “an increase of travel of less than 150 miles for some women is not an undue burden under Casey.” Id. at 598.
*454 With these precedents establishing the parameters of our inquiry today, we turn to the State’s two principal arguments for reversing the district court. First, the State argues that the district court erred in failing to undertake a rational basis review of the Act, a review that must acknowledge that there is indeed a rational interest of the State in protecting the health of its citizens. Second, the State argues that the district court erred in holding that the Act imposed an undue burden on a woman’s right to an abortion because Mississippi women could travel to adjoining states to obtain an abortion. We will discuss the rational basis of the Act first.
A.
In issuing the preliminary injunction, the district court saw the rational basis and no-undue-burden requirements as independent of each other, and both had to be satisfied in order for the Act to survive; that is, a regulation of the constitutional right must be struck if it fails to meet either test. Consequently, once the district court had held that the law created an undue burden on the exercise of the constitutional right, it became superfluous, the district court concluded, to engage in the rational basis inquiry. Conversely, the State argues that the rational basis inquiry is a necessary part of the total analysis, and it cannot be divorced from the undue burden analysis; this is especially true because the rational basis for the law will inform whether any burden on the right to an abortion is “undue.” We hold that we do not need to decide this dispute because, assuming that a rational basis review is a necessary first step, our court in Abbott has addressed the rational basis of a virtually identical law, and we are bound by that precedent to accept that the Mississippi statute has a rational basis.[5]
In Abbott, we recognized that in determining whether a law is rational, the scales are tipped in a state’s favor. Id. at 594 (“[Cjourts must presume that the law in question is valid and sustain it so long as the law is rationally related to a legitimate state interest.”). A law meets this standard if it is “based on rational speculation” even if that speculation is unsupported by evidence or empirical data. Id. We thus held that the Texas regulation satisfied a rational basis review because it was based on the rational speculation that it would “assist in preventing patient abandonment” by the doctor providing the abortion. Id. at 594-95. We see no basis for distinguishing the rational basis analysis of H.B. 1390. None of the rationales discussed in Abbott was state specific, and each would be equally applicable to H.B. 1390.
Accordingly, we hold that H.B. 1390 satisfies rational basis review based upon our binding precedent in Abbott. We now turn to the thornier question: whether JWHO has demonstrated a substantial likelihood of proving that the law imposes an undue burden on the right to choose an abortion. Gonzales, 550 U.S. at 158, 127 S.Ct. 1610 (requiring that an abortion regulation satisfy rational basis review and not impose an undue burden).
B.
A law imposes an undue burden on the right to an abortion when the law “has the purpose or effect of creating a ‘substantial obstacle’ to a woman’s choice.” Abbott, *455 748 F.3d at 590 (citing Casey, 505 U.S. at 874, 878, 112 S.Ct. 2791). The district court did not reach the purpose inquiry, and the parties do not address it. We will therefore limit our discussion to the Act’s effects.
1.
Assuming that the Clinic will close, the State argues that this result still would not create an undue burden. The State argues that, at most, an incidental burden will be created as Mississippi women will only be required to travel a further distance to reach an abortion clinic. The State points to clinics in cities in neighboring states such as Baton Rouge, New Orleans, and Memphis. Relying on these neighboring clinics, the State argues that Abbott demands reversal in this case because of the nearby clinics, albeit in other states.
JWHO does not argue that the distances involved alone impose an undue burden. Nor could it in the light of Abbott. See id. at 598 (“We therefore conclude that Casey counsels against striking down a statute solely because women may have to travel long distances to obtain abortions.”). We thus accept that, if these out-of-state clinics are properly considered in the undue burden analysis, the Act may well be upheld. This question is a central issue upon which the parties disagree: In analyzing whether the Act imposes an undue burden, should the analysis focus only on the availability of abortions in Mississippi, or should it also take into account nearby clinics in neighboring states. We turn now to this dispute.[6]
2.
The district court held that because H.B. 1390 would close the only abortion clinic in Mississippi, women in Mississippi would be forced to travel to a neighboring state for an abortion, which, according to the district court, creates an undue burden notwithstanding that the physical distances may not be unduly burdensome. The district court reasoned that accepting the State’s argument would result in “a patchwork system where constitutional rights are available in some states but not in others.” The district court also found support in a prior case decided in the same district court — Jackson Women’s Health Org., Inc. v. Amy, 330 F.Supp.2d 820 (S.D.Miss.2004) — and a vacated Fifth Circuit decision — Okpalobi v. Foster, 190 F.3d 337 (5th Cir.1999), superseded on reh’g en banc on other grounds, 244 F.3d 405 (5th Cir.2001). The district court held that these two decisions, combined with the practical considerations, demonstrated that closing the only abortion clinic in Mississippi would impose an undue burden on the constitutional right.
The State attacks the district court’s conclusion by pointing out that there is no reason that traveling a given distance is made more burdensome by simply crossing a state line during the trip. Crossing a state line, it argues, does not increase the time or money required for a trip of a given length. Thus, for the State, reasonable travel distances to other states’ facilities should end further discussion.
JWHO supports the district court’s conclusion that state lines do matter by pointing out that courts do not look to the *456 availability of abortions in neighboring states to determine whether a regulation imposed an undue burden. For instance, in Casey, the Supreme Court did not consider the availability of abortions in states surrounding Pennsylvania in invalidating the spousal notification law. The Court held that the law was likely to impose an undue burden because a “significant number of women ... are likely to be deterred from procuring an abortion as surely as if [Pennsylvania] had outlawed abortion in all cases.” Casey, 505 U.S. at 893-94, 112 S.Ct. 2791. The Court found it significant that the regulation mirrored the effect of a law outlawing abortion in Pennsylvania. The Court did not mention or consider the potential availability of abortions without spousal notification in surrounding states.
Similarly, in Jane L. v. Bangerter, the Tenth Circuit considered the constitutionality of a Utah law that significantly restricted abortions after twenty weeks gestation. 102 F.3d 1112, 1114 (10th Cir.1996), cert denied, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). The district court in the case held that the restriction did not impose an undue burden on a woman’s right to choose an abortion because the record did not contain evidence that any woman had wanted or attempted to obtain an abortion after twenty weeks gestation. Id. at 1117. Reversing the district court, the Tenth Circuit cited a declaration by the director of a Utah abortion clinic stating that in “the Clinic routinely refers to another state those Utah residents needing an abortion after twenty weeks,” and that in 1990 “the Clinic referred out of state ten to fifteen women who needed such abortions.” Id. In view of this fact, the court did not engage in any further analysis of the travel time and costs to women who were required to travel to those out of state clinics. Id. Instead, the panel moved directly to conclude that “a group of women exists in Utah for whom [the statute] actually operates as an impermissible ban on the right to abort a nonviable fetus.” Id. at 1117-18. The panel found dispositive that women were forced to leave the state to exercise their constitutional right.
Jane L. stands out as the clearest example of an appeals court focusing its analysis on a regulation’s effect within the regulating state. We also note, however, that other courts, in striking down abortion regulations, have failed to consider the availability of abortions in neighboring states. See, e.g., Women’s Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 200-10 (6th Cir.1997) (invalidating Ohio abortion regulations because they imposed an undue burden on the right to an abortion without discussion of availability in neighboring states).[7] These cases strongly suggest that courts have limited the undue burden analysis to the burden imposed within the state.[8]
*457 3.
JWHO’s position finds additional support in.State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208 (1938). In Gaines, the University of Missouri’s law school denied Gaines admission because he was African-American. Id. at 342, 59 S.Ct. 232. In denying admission to its law school, the state advised Gaines that he could take advantage of Missouri’s statutory scheme through which the University of Missouri board of curators would provide him, as an African-American Missouri resident, a tuition stipend for use at a law school in an adjacent state. Id. at 342-43, 59 S.Ct. 232. Gaines rejected this offer and sought a writ of mandamus to compel the University of Missouri to grant him admission, which the Missouri Supreme Court denied. Id. at 342, 59 S.Ct. 232.
The Supreme Court of the United States reversed, holding that Missouri’s tuition stipend program could not relieve the State of Missouri of its obligations to its citizens under the Fourteenth Amendment. In a passage worth quoting at length, the Court reasoned that:
[T]he obligation of the State to give the protection of equal laws can be performed only where its laws operate, that is, within its own jurisdiction.... That obligation is imposed by the Constitution upon the States severally as governmental entities,&emdash;each responsible for its own laws establishing the rights and duties of persons within its borders. It is an obligation the burden of which cannot be cast by one State upon another, and no State can be excused from performance by what another State may do or fail to do. That separate responsibility of each State within its own sphere is of the essence of statehood maintained under our dual system.
Id. at 350, 59 S.Ct. 232.
To be sure, there are distinctions between Gaines and the instant case, which the State points out. First, Gaines was an Equal Protection case, which addresses the discriminatory distribution of a service provided by the state government; and second, Gaines has never been cited in the abortion context. In contrast, this appeal addresses rights arising under the Due Process Clause, in which the state government is not providing any service. The State is only regulating a privately provided service that is protected by the United States Constitution.
Although cognizant of these serious distinctions, and although decided in a different context, we think the principle of Gaines resolves this appeal. Gaines simply and plainly holds that a state cannot lean on its sovereign neighbors to provide protection of its citizens’ federal constitutional rights, a principle that obviously has trenchant relevance here. Pre-viability, a woman has the constitutional right to end her pregnancy by abortion. H.B. 1390 effectively extinguishes that right within Mississippi’s borders. Gaines locks the gate for Mississippi to escape to another state’s protective umbrella and thus requires us to conduct the undue burden inquiry by looking only at the ability of Mississippi women to exercise their right within Mississippi’s borders. There is no hiding the relevant language in Gaines: “[N]o State can be excused from performance by what another state may do or fail to do.” Id.
Consistent with Gaines, we hold that the proper formulation of the undue burden analysis focuses solely on the effects within the regulating state&emdash;here, Mississippi. Under this formulation, *458 JWHO has demonstrated a substantial likelihood of proving that H.B. 1390 — effectively closing the one abortion clinic in the state — has the effect of placing a substantial obstacle in the path of a woman seeking an abortion in Mississippi, and is therefore unconstitutional as applied to the plaintiffs in this case.[9]
V.
Having reached this conclusion, we close with two observations. First, the State argues that our analysis bars the State from enforcing any regulation against JWHO that would close the Clinic simply because it is the only clinic in Mississippi. For instance, the State argues that our opinion would preclude the State from closing the Clinic for sanitation violations because, like H.B. 1390, such action would impose an undue burden on the right to an abortion by closing the only clinic in Mississippi.
Nothing in this opinion should be read to hold that any law or regulation that has the effect of closing all abortion clinics in a state would inevitably fail the undue burden analysis. Whether the State’s hypothetical sanitation regulation would impose an undue burden is not a question before this court, and is not a question that can be answered without reference to the factual context in which the regulation arose and operates. Here, we hold only that JWHO has demonstrated a substantial likelihood of proving that H.B. 1390, on this record and as applied to the plaintiffs in this case, imposes an undue burden on a woman’s right to choose an abortion. In reaching this determination, we look to the entire record and factual context in which the law operates, including, but not limited to, the statutory provision in question, the Clinic’s status as the sole abortion clinic in Mississippi, the ability of the Clinic to comply with H.B. 1390, Dr. Parker’s and Dr. Doe’s efforts to obtain admitting privileges, the reasons cited by the hospitals for denying admitting privileges to Dr. Parker and Dr. Doe, the absence of a Mississippi law prohibiting hospitals from discriminating against physicians who perform abortions when granting admitting privileges, and the nature and process of the admitting-privileges determination. See Casey, 505 U.S. at 887-95, 112 S.Ct. 2791 (looking to factual context in striking down Pennsylvania’s spousal notification provision).
Finally, this case is an as-applied challenge to H.B. 1390. The district court’s judgment granting the preliminary injunction enjoined “any and all forms of enforcement of the Admitting Privileges Requirement of the Act during the pendency of this litigation.” To the extent that this language extends the preliminary injunction to actions by the State against parties other than JWHO and the other plaintiffs, it was an overly broad remedy in an as-applied challenge. We modify the preliminary injunction to enjoin the State from enforcing the admitting privileges provision of H.B. 1390 against the plaintiffs in this case.
VI.
In this opinion we hold that, assuming a rational basis inquiry is a necessary first step in deciding the constitutionality of an abortion regulation, H.B. 1390 satisfies rational basis review. We hold that Gaines instructs us to consider the effects of H.B. *459 1390 only within Mississippi in conducting an undue burden analysis. As a result, we hold that JWHO has demonstrated a substantial likelihood of success on its claim that H.B. 1390’s admission-privileges requirement imposes an undue burden on a woman’s right to choose an abortion in Mississippi, and is therefore unconstitutional as applied to the plaintiffs in this case. Finally, we hold that, to the extent the district court’s preliminary injunction enjoined enforcement of H.B. 1390 against parties other than the plaintiffs in this case, it was overly broad and is modified to apply only to the parties in this case. Accordingly, the judgment of the district court granting the preliminary injunction is
AFFIRMED as modified.

. The district court allowed Dr. Doe and Dr. Roe to participate in this action under pseudonyms.

. JWHO's initial complaint also challenged another portion of H.B. 1390 — a requirement that all physicians associated with an abortion clinic be board certified or eligible in obstetrics and gynecology. JWHO did not, however, seek to enjoin this provision, so no challenge to it is before this court.

.In denying the doctors’ applications for admitting privileges, the local hospitals cited reasons relating to the doctors’ provisions of abortion services, such as: ”[t]he nature of your proposed medical practice is inconsistent with this Hospital’s policies and practices as concerns abortion and, in particular, elective abortion,” and "[t]he nature of your proposed medical practice would lead to both an internal and external disruption of the Hospital's function and business within this community.”

. The dissent also argues that H.B. 1390 will not have the effect of closing the Clinic because the closure is actually caused by the actions of private parties' — the private hospitals that denied the admitting privileges applications. See Post at 449-51. We have no occasion to consider this argument as it too has been waived. As discussed above, the State's opening brief accepts that the Act will force the closure of the Clinic. And to the extent the State has challenged the factual findings of the district court, except with regards to the rational basis issue, the State only provides conclusory challenges without any argument, so these challenges are also waived. See Kohler v. Englade, 470 F.3d 1104, 1114 (5th Cir.2006) (holding that plaintiff failed to adequately brief an issue where “he failed to cite any legal authority for the proposition”); see also Fed. R.App. P. 28(a)(8)(A) (requiring that appellant’s brief contain “appellant’s contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies”).

. The Texas law at issue in Abbott and H.B. 1390 are substantively identical. Both require that the doctor performing an abortion hold admitting privileges at a nearby hospital. See Abbott, 748 F.3d at 587 (explaining that Texas regulation "requires that a physician performing or inducing an abortion have admitting privileges ... at a hospital no more than thirty miles from the location where the abortion is provided”).

. Abbott does not speak to this issue. Even if the admitting privileges requirement in Abbott were enforced, a number of clinics would remain open in Texas. Abbott, 748 F.3d at 598 ("Although some clinics may be required to shut their doors, there is no showing whatsoever that any woman will lack reasonable access to a clinic within Texas. All of the major Texas cities, including Austin, Corpus Christi, Dallas, El Paso, Houston, and San Antonio, continue to have multiple clinics where many physicians will have or obtain hospital admitting privileges.” (emphasis in original)).

. A panel of this court embraced a similar theory in Okpalobi. The panel in Okpalobi held that a Louisiana statute imposed an undue burden because "[a] measure that has the effect of forcing all or a substantial portion of a state’s abortion providers to stop offering such procedures creates a substantial obstacle to a woman’s right to have a pre-viability abortion, thus constituting an undue burden under Casey." Okpalobi, 190 F.3d at 357. The panel opinion in Okpalobi was later vacated on jurisdictional grounds. Okpalobi v. Foster, 244 F.3d 405 (5th Cir.2001) (en banc).

. These authorities are supported by the practical effects that would follow from the State’s proposed rule. It would be exceedingly difficult for courts to engage in an as-applied analysis of an abortion restriction if we were required to consider not only the effect on abortion clinics in the regulating state, but also the law, potential changes in the law, and locations of abortion clinics in neighboring states. This concern is not farfetched. Both Alabama and Louisiana have passed similar admitting privileges regulations for abortion providers, which could lead to the closure of clinics in those states.

. Consistent with this holding, we also hold that the district court did not abuse its discretion in finding that the injunction would not disserve the public interest because it will prevent constitutional deprivations. See, e.g., Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir.2012) is always in the public interest to prevent the violation of a party's constitutional rights.”).