BERZON, Circuit Judge,
with whom Judges PAEZ and GRABER join, concurring:
I agree with the majority that the district court erred in granting an injunction, as Aircraft Service International Group (“ASIG”) has not complied with its duty under Section 8 of the Norris-LaGuardia Act (“NLGA”) to make “every reasonable effort to settle [its] dispute” with the fuel-ers before seeking an injunction prohibiting the planned work stoppage. 29 U.S.C. § 108. I write only to explain that, in my view, even if ASIG had complied with its duty under Section 8, ASIG still would not have been entitled to an injunction.
The conflict underlying this case is un-disputably a “labor dispute” for purposes of the NLGA.[1] As I explain below, it is not a dispute governed by any of the specific dispute resolution provisions of the Rail *1080 way Labor Act (“RLA”), 45 U.S.C. § 151 et seq. As the disagreement between ASIG and the fuelers falls wholly outside the RLA’s regulatory framework, there is no federal labor statute that supersedes the NLGA’s otherwise applicable prohibition on federal court injunctions during labor disputes. The district court therefore lacks authority to enjoin the prospective work stoppage, even if ASIG complies with NLGA Section 8.
The majority does not say otherwise. But this is an instance in which the narrow ruling may simply prolong litigation by inviting a second motion for an injunction, preliminary or permanent, after Section 8 compliance. I would prefer to put this case to rest now.
I.
The NLGA severely constrains federal courts’ jurisdiction to issue injunctions concerning labor disputes, see 29 U.S.C. §§ 101-115, including entirely eliminating jurisdiction to issue injunctions in certain instances, see id. § 104.[2]
As the majority states, see Maj. Op. at 1074, where the RLA unambiguously applies, the jurisdictional bar of the NLGA, 29 U.S.C. § 104, can give way. See, e.g., Burlington N. R.R. Co. v. Bhd. of Maint. of Way Emps., 481 U.S. 429, 445, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987). But “[t]his exception is necessarily a limited one,” and is applicable only where a party violates an unambiguous, applicable provision of the RLA. Id. at 446-47, 107 S.Ct. 1841. Given the express divestment of authority of NLGA Section 4, “the command of the [RLA] should be explicit and the purpose to afford a judicial remedy plain” before a court may grant injunctive relief to enforce an obligation under the RLA. Gen. Comm. of Adjustment of Bhd. of Locomotive Eng’rs for Mo.-Kan.-Tex.R.R. v. Mo.Kan.-Tex.R. Co., 320 U.S. 323, 337, 64 S.Ct. 146, 88 L.Ed. 76 (1943) (“M-K-T ”). This stringent rule recognizes that, “[fjaced with a choice between [an] ambiguity in the RLA and the unambiguous mandate of the [NLGA], we [are to] choose the latter.” Burlington, 481 U.S. at 447, *1081 107 S.Ct. 1841. Any ambiguity eliminates federal courts’ equitable jurisdiction to grant injunctive relief.[3]
II.
The RLA does not regulate all relations between carriers and their employees. For example, a state-law wrongful discharge claim is not subject to the RLA’s minor dispute resolution provision unless the dispute is grounded in the interpretation or application of a collective bargaining agreement. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 265-66, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). And the RLA does not regulate jurisdictional disputes between unions over the “overlapping ... interests of two crafts.” MK-T, 320 U.S. at 334-37, 64 S.Ct. 146. Instead, the RLA encompasses only “three classes of labor disputes and establishes a different dispute resolution procedure for each.” W. Airlines, Inc. v. Int’l Bhd. of Teamsters, 480 U.S. 1301, 1302, 107 S.Ct. 1515, 94 L.Ed.2d 744 (1987) (O’Connor, J., in chambers).
Specifically, the RLA governs “[m]ajor,” “[m]inor,” and “Representation” disputes. W. Airlines, 480 U.S. at 1302, 107 S.Ct. 1515. “Major disputes” comprise a “class” of disputes “concerning ‘rates of pay, rules or working conditions,’ ... [and] relate to ‘the formation of collective [bargaining] agreements or efforts to secure them.’ ” Norris, 512 U.S. at 252, 114 S.Ct. 2239 (quoting Consol. Rail Corp. (Conrail) v. Ry. Labor Execs.’ Ass’n, 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989)) (last alteration in original). “The second class of disputes, known as ‘minor’ disputes, ‘gro[w] out of grievances....’” Id. (quoting 45 U.S.C. § 151a) (first alteration in original). These involve “ ‘controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.’” Id. at 253, 114 S.Ct. 2239 (quoting Trainmen v. Chicago R. & I.R. Co., 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)). Therefore, under Congress’s scheme, “major disputes seek to create contractual rights, minor disputes to enforce them.” Conrail, 491 U.S. at 302, 109 S.Ct. 2477. Finally, “ ‘representation’ disputes involve defining the bargaining unit and determining the employee representative for collective bargaining.” W. Airlines, Inc., 480 U.S. at 1302, 107 S.Ct. 1515. The dispute between ASIG and the fuelers here falls into none of the three relevant RLA categories.
The closest fit is the “minor” dispute category. The fuelers’ concern is with the suspension of a fellow worker, i.e., Popes-cu. The RLA’s mandatory arbitration mechanism applies, inter alia, to the resolution of minor “disputes between an employee or group of employees and a carrier ... growing out of grievances,” 45 U.S.C. § 153, First (i) (emphasis added), and thus can cover many disputes concerning whether a certain employee should have been disciplined or discharged. Indeed, employee discipline issues are often the subject of RLA minor disputes. See, e.g., Union Pac. R.R. Co. v. Bhd. of Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment, 558 U.S. 67, 72-76, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009); United Transp. Union v. BNSF Ry. Co., 710 F.3d 915 (9th Cir.2013); Ass’n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 280 F.3d 901 (9th Cir.2002). But Hawaiian Airlines, Inc. v. Norris made clear that the word “grievances” in the RLA minor dispute resolution provisions refers only to “disputes involving the application or interpretation of a CBA.” 512 *1082 U.S. at 255, 114 S.Ct. 2239. Left outside the RLA—and so subject to resolution under state law—are quotidian workplace disputes that do not concern the application or interpretation of a collective bargaining agreement, such as the one at hand. Precisely because the dispute here is so similar to a traditional grievance and could well be a minor dispute were a collective bargaining agreement in place between ASIG and the fuelers, it cannot be a major dispute, i.e., one involving employees seeking the formation of a future-oriented collective bargaining agreement.
The underlying dispute in this case is not a representation dispute for essentially the same reason—the workers are . not seeking to collectively bargain regarding future terms and conditions of employment, and have no interest in choosing a representative of their group at this time. RLA Sections 2, Third, Fourth, and Ninth regulate the means by which employees may bind themselves to a representative for the purpose of negotiating with an employer. See 45 U.S.C. § 152, Third, Fourth, and Ninth. But none of those provisions contains an unambiguous obligation to select a representative where there is no desire to negotiate terms and conditions of employment with the employer. See Burlington, 481 U.S. at 447, 107 S.Ct. 1841.
Section 2, Third, could conceivably be read in isolation to require that the employees elect a representative: “Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference.... ” 45 U.S.C. § 152, Third. The immediately following section, however, Section 2, Fourth, states that “[e]mployees shall have the right to organize,” rather than the duty to organize. 45 U.S.C. § 152, Fourth. In other words, Section 2, Fourth, gives the employees “the right to determine who shall be the representative of the group or, indeed, whether they shall have any representation at all.” Bhd. of Ry. & S.S. Clerks v. Ass’n for Benefit of Non-Contract Emps., 380 U.S. 650, 670, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). Read in combination with Section 2, Fourth, then, Section 2, Third, does not require representation. Rather, it prohibits both the employer and the employees from “in any way interfering] with, influencing], or coercing] the other in its choice of representatives.” 45 U.S.C. § 152, Third. As the Fifth Circuit concluded, “employees were given the right under the Act not only to opt for collective bargaining, but to reject it as well.... [T]he implicit message throughout the Act is that the ‘complete independence’ of the employees necessarily includes the right to reject collective representation. Indeed, the concept of ‘complete independence’ is inconsistent with forced representation.” Russell v. Nat’l Mediation Bd., 714 F.2d 1332, 1343 (5th Cir.1983), reh’g denied, 721 F.2d 819, cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984) (quoting 45 U.S.C. § 151a).
Nor does Section 2, Ninth compel the fuelers to seek union representation where they do not wish to be so represented. Section 2, Ninth, provides, in part:
If any dispute shall arise among a carrier’s employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the *1083 same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter.
45 U.S.C. § 152, Ninth. In terms, Section 2, Ninth, is limited to disputes “among a carrier’s employees as to who are the representatives of such employees,” and does not apply where there is no such dispute among the employees.’ Id. (emphasis added). For that reason, the D.C. Circuit has explained that the representation dispute mechanisms of Section 2, Ninth, may only be initiated by employees where “the requisite ‘dispute’ [among employees] ... arise[s]”: “Section 2, Ninth does not contemplate [an] action-initiating role[ ] ... for carriers.” Ry. Labor Execs. Ass’n v. Nat’l Mediation Bd., 29 F.3d 655, 665 (D.C.Cir.1994) (en banc), amended by 38 F.3d 1224, cert. denied sub nom. Burlington N. R.R. Co. v. Ry. Labor Execs. Ass’n, 514 U.S. 1032, 115 S.Ct. 1392, 131 L.Ed.2d 243 (1995).
The Second Circuit’s opinion in Summit Airlines, Inc. v. Teamsters Local Union No. 295, 628 F.2d 787, 795 (2d Cir.1980) is consistent with this understanding. In Summit Airlines, the Second Circuit held that the representation dispute mechanisms of Section 2, Ninth are not “optional” where a union “seek[s] to represent ” a class or craft. Id. (emphasis added). Consequently, a union cannot “resort directly to economic coercion” of a carrier where its object is to induce the carrier voluntarily to recognize the union as the representative of its employees. Id. Unless a union formally seeks and obtains certification as the employees’ chosen representative, the employer’s duty to “treat” with, i.e. recognize, the representative, is not triggered. Id. at 793, 795. Thus, although an employer may voluntarily recognize a representative of a group of employees, the employer’s duty to treat with a representative arises only where a representative is chosen through Section 2, Ninth’s procedures. Id.; see also Galveston Wharves, 4 N.M.B. 200, 203 (1962).
In fact, according to the National Mediation Board, the fuelers at Sea-Tac are incapable of choosing among themselves a representative for dealing with their employer, as they are not a nationwide craft or class. See Aircraft Serv. Int’l Group, 40 N.M.B. 43, 49 (Nov. 20, 2012). The National Mediation Board’s “longstanding practice is to conduct elections across a carrier’s entire system,” i.e. for class or craft units that are “system-wide” or “nation-wide” if the carrier operates nationally. Delta Air Lines Global Servs., 28 N.M.B. 456, 460, 461 (2001). Because “[t]he craft or class must include all of the employees working in the classification deemed eligible, regardless of work locations,” Aircraft Serv. In’l Group, 40 N.M.B. at 48, and because ASIG’s employees are part of a “nationwide” system, id. at 52, the fuelers at Sea-Tac could not elect a representative for the group under Section 2, Ninth, even if they wished to do so.
It would thus be doubly nonsensical to require the fuelers to seek representation under Section 2, Ninth, where the RLA imposes no such unambiguous duty and the Sea-Tac fuelers could not validly elect a representative of themselves as a group. As the dissenter to the original panel decision in this case concluded, “[w]hereas the RLA simply grants employees a right to organize, [there is no] obligation on the employees to seek unwanted representation.” Aircraft Serv. Int’l, Inc. v. Int’l Bhd. of Teamsters Local 117, 742 F.3d 1110, 1128 (9th Cir.2014) (M. Smith, J., dissenting). Rendering unionization compulsory violates the directive to favor “the unambiguous mandate of the [NLGA]” regarding enjoining labor disputes where there is “ambiguity in the RLA,” and *1084 would impose an illogical and impossible-to-fulfill condition on the fuelers. Burlington, 481 U.S. at 447, 107 S.Ct. 1841.
The district court nonetheless held that the fuelers’ decision to strike was prohibited by the RLA because to hold otherwise would “wholly frustrate” RLA Section 2, First, which requires covered employers and employees “to exert every reasonable effort ... to settle all disputes, whether arising out of the application of ... agreements [concerning rates of pay, rules, and working conditions] or. otherwise.” 45 U.S.C. § 152, First. But as the Supreme Court has explained, Section 2, First, is not a stand-alone provision. See M-K-T, 320 U.S. at 334, 64 S.Ct. 146.
Longstanding precedent confirms that Section 2, First does not impose duties to refrain from acts not connected to those covered elsewhere in the RLA. M-K-T held that Section 2, First, “merely states the policy [of the RLA] which those other provisions [of the RLA] buttress with more particularized commands.” 320 U.S. at 334, 64 S.Ct. 146. While Chicago & North Western Railway v. United Transportation Union, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), determined that Section 2, First, is judicially enforceable in some circumstances, that case held only that a party breaches the duty described in Section 2, First, where that duty implements some other command in the RLA.
Specifically, in Chicago & North Western Railway, after “the parties ha[d] exhausted the formal procedures of the Railway Labor Act,” the union threatened to strike. 402 U.S. at 571, 573, 91 S.Ct. 1731. The carrier persuaded a district court to enjoin any such strike, arguing that the union had not engaged in a good faith effort to discharge the obligations described in other RLA provisions, including the Union’s alleged refusal to bargain with the carrier. Id. at 574, 91 S.Ct. 1731. Chicago & North Western Railway held that such an injunction would be generally permissible, describing the content of the duty imposed by Section 2, First, by repeated analogy to “the duty under the National Labor Relations Act to bargain in good faith,” which authorizes courts to “ ‘pass[ ] judgment upon the quality of the negotiations.’ ” Id. at 574-75, 91 S.Ct. 1731 (quoting Archibald Cox, The Duty to Bargain in Good Faith, 71 Harv. L.Rev. 1401, 1412-13 (1958)). It was in this sense— because it required parties to satisfy in good faith their more particularized duties—that the Court concluded that “[section] 2 First was intended to be more than a mere statement of policy or exhortation to the parties.” Id. at 577, 91 S.Ct. 1731.
Chicago & North Western Railway, then, rejected only the suggestion that MK-T precluded reading Section 2, First as imposing a good faith requirement as to other, express duties elsewhere delineated in the RLA. Id. Chicago & North Western Railway left untouched the Supreme Court’s pronouncement in M-K-T that Section 2, First, does not create a freestanding, independent duty.
Cases both before and after M-K-T and Chicago & North Western Railway confirm the understanding that RLA Section 2, First, is enforceable only in conjunction with another RLA provision. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 548-49, 57 S.Ct. 592, 81 L.Ed. 789 (1937), for example, held that there is a duty to negotiate a first collective bargaining agreement, relying on the combination of RLA Section 2, First, and the obligation imposed by RLA Section 2, Ninth to “treat with” the properly chosen majority representative. Summit Airlines similarly determined that there is a duty to settle a demand for recognition as a collective bargaining representative in the *1085 combination of RLA Section 2, Ninth, which governs the resolution of dispute resolution mechanism, and Section 2, First. 628 F.2d at 791-95.
Accordingly, there is no basis for interpreting the word “dispute” in Section 2, First, as carrying a meaning entirely divorced from the particular disputes described elsewhere in the RLA. Where, as here, a dispute falls into none of the categories contemplated elsewhere in the RLA, Section 2, First, imposes no obligation to settle it, in good faith or otherwise.
III.
This conclusion has negative as well as beneficial consequences for the fuelers. Although the RLA does not forbid them to strike, it does not protect that activity, either. “No private cause of action exists under the RLA for a group of employees who assert retaliatory conduct based upon employee activities which bear no relationship to establishing a union.... ” Herring v. Delta Air Lines, Inc., 894 F.2d 1020, 1023 (9th Cir.1990); accord Gullickson v. Sw. Airlines Pilots’ Ass’n, 87 F.3d 1176, 1186-87 (10th Cir.1996); Rachford v. Evergreen Int’l Airlines, Inc., 596 F.Supp. 384, 386 (N.D.Ill.1984). Where, as here, employees have disclaimed any effort to form a union, and in fact are incapable of electing a representative under the RLA, see Aircraft Serv. Int’l Group, 40 N.M.B. at 48-49, they have no recourse to the RLA if their employer retaliates against them for striking.
IV.
In sum, the fuelers “do not need to find a particular provision in the RLA to justify [striking]. [Rather,] [t]he affected [carrier] must find a specific mandate of the RLA that prohibits the [strike]” to be entitled to an injunction. Ry. Labor Execs. Ass’n v. Wheeling & Lake Erie Ry. Co., 914 F.2d 53, 56 (4th Cir.1990). As no specific mandate of the RLA prohibits nonunionized employees from engaging in a strike as a first step of self-help, ASIG is not entitled to an injunction against this behavior. Accordingly, the injunction should be vacated for that reason, as well as for the reason endorsed by the majority-

. The parties agree that the conflict underlying this case is a "labor dispute” for purposes of the NLGA. See 29 U.S.C. § 113(c) ("The term ‘labor dispute’ includes any controversy concerning terms or conditions of employment. ...”).

. Section 104 of the NLGA provides:
No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;
(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;
(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;
(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;
(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;
(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and
(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.
29 U.S.C. § 104.

. The NLGA does not affect federal courts’ jurisdiction to grant other relief, such as damages.