GARCIA-MIR ET AL. *v.* SMITH, ATTORNEY GENERAL
OF THE UNITED STATES, ET AL.

No. A–582.   Decided February 1, 1985

JUSTICE REHNQUIST, Circuit Justice.

Applicants are members of a class of Cuban nationals who unlawfully entered the United States as part of the Mariel boatlift in 1980.   They have been detained in the federal penitentiary in Atlanta pending Cuba's willingness to accept their return, and have had final orders of exclusion entered against them by the Board of Immigration Appeals.   *Matter of Leon-Orosco* and *Rodriguez-Colas*, Interim Decision 2974 (1983).   The instant proceedings are the most recent stage of litigation which has lasted for more than four years.   Attorneys for the class have sought to reopen the administrative exclusion hearings of two individual class members on the theory that they belong to a "social group," defined as the Mariel boatlift participants, whose members allegedly would

be subject to persecution if returned to Cuba, thus making them eligible for consideration for asylum. See 8 U. S. C. §§ 1101(a)(42) (A), 1158. The parties stipulated that the decisions on the two individual motions to reopen "will be binding on all asylum/withholding of deportation issues relating to membership in the Freedom Flotilla as a social group," but they also expressly provided that the decisions would have no binding effect over the determinations of other class members "with respect to statutory and regulatory exceptions to asylum/withholding eligibility."

The Board of Immigration Appeals denied the two test motions to reopen on the ground that the aliens had not presented a prima facie case of persecution. The District Court ruled on October 15, 1984, that the aliens had presented sufficient evidence of a likelihood of persecution and, therefore, that the Board had abused its discretion in failing to reopen the test cases. *Fernandez-Roque* v. *Smith*, 599 F. Supp. 1103 (1984). The District Court remanded the test cases to the Board and set aside all outstanding orders of exclusion.

Meanwhile, the United States and Cuba on December 14, 1984, concluded an agreement on immigration matters in which Cuba consented to the return of 2,746 named boatlift participants in exchange for the resumption of this country's normal processing of preference immigration visas for Cuban nationals. The agreement limits the number of boatlift participants that may be returned to 100 per month, except that, if fewer than 100 are returned in a calendar month, the shortfall may be made up in subsequent months up to a total of 150 returnees per month. The Cuban Government apparently has indicated that it will not mistreat anyone returned under the agreement. Respondents contend that the United States will be severely prejudiced by any delay in carrying out this agreement because Cuba may refuse at some future time to complete its end of the bargain after it has received the domestic political benefits of the eased immigration to this country.

Respondents appealed the District Court's October 15, 1984, order and sought a stay pending appeal, which was denied by the District Court. The Court of Appeals for the Eleventh Circuit granted a partial stay on January 16, 1985, which it modified by order of January 25, 1985. The net effect of the stay as modified is threefold: first, to stay the vacation and remand of all outstanding orders of exclusion; second, to acknowledge the Government's voluntary agreement not to deport any class members until February 8, 1985; and third, to prohibit the Government from taking any "action to return to Cuba any of those class members identified in the stipulations who claim eligibility for asylum on the ground that they have a well-founded fear of persecution because of membership in the social group, and who are not returnable under subsection 2 of 8 U. S. C. § 1253(h), until such time as the issues on this appeal are resolved or until further order of this court" (footnotes omitted). Applicants seek to have this stay set aside or further modified.

A stay granted by a court of appeals is entitled to great deference from this Court because the court of appeals ordinarily has a greater familiarity with the facts and issues in a given case. See *Bonura* v. *CBS, Inc.*, 459 U. S. 1313 (1983) (WHITE, J., in chambers); *O'Connor* v. *Board of Education*, 449 U. S. 1301, 1304 (1980) (STEVENS, J., in chambers); *Coleman* v. *PACCAR, Inc.*, 424 U. S. 1301, 1304 (1976) (REHNQUIST, J., in chambers). There is no need to evaluate applicants' likelihood of success on the merits; they simply have not made a showing of irreparable injury which would warrant interference with the partial stay granted by the Court of Appeals. The Court of Appeals merely refused to further delay deportation of class members who would not be eligible for asylum under the "social class" theory even if the two individual test motions were ultimately successful on the merits. These are persons who are excludable and not entitled to asylum under 8 U. S. C. § 1253(h)(2) because they have committed serious crimes or they otherwise pose a danger to the security of the United States. There is no reason

to grant these individuals automatic relief simply because some of their fellow class members may be eligible to be considered for asylum.

Under the partial stay, every class member may pursue his own individual remedies during the pendency of the appeal and, if he is not excludable under § 1253(h)(2), prevent his deportation. In fact, the terms of the partial stay shift to the Government the burden of proving that the alien is within that statutory provision before he may be excluded, when ordinarily the burden would be on the alien to prove his entitlement to remain in this country. Applicants' principal argument against the partial stay is that requiring individual motions to reopen would present significant administrative difficulties. Each of the more than 1,500 class members will have to file individual motions to reopen. The necessary balancing of these difficulties against the prejudice to the Government from further delay is something the Court of Appeals is in a far better position than this Court to do. The specificity of the partial stay order indicates that it was drafted with some care and that it endeavors to reflect a considered balancing of the various interests at issue. This Court is not in a position to second-guess a balancing of this kind.

The application is denied.