480 U.S. 1301
 107 S.Ct. 1515
 94 L.Ed.2d 744
 WESTERN AIRLINES, INC. and Delta Air Lines, Inc.
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS and Air Transport Employees
No. A-716.
 April 2, 1987.
 
 Justice O'CONNOR, Circuit Justice.
 
 
 1
 Applicants request that I issue a stay pending the filing and disposition of a petition for certiorari to review the judgment of the United States Court of Appeals for the Ninth Circuit.
 
 
 2
 The underlying dispute in this case involves the division of responsibility for regulation of collective bargaining between airlines and their employees under the Railway Labor Act, 44 Stat. 577, as amended, 45 U.S.C. § 151 et seq. The Act defines three classes of labor disputes and establishes a different dispute resolution procedure for each. "Minor" disputes involve the application or interpretation of an existing collective-bargaining agreement. Minor disputes are subject to arbitration by a System Board of Adjustment. 45 U.S.C. § 184. While courts lack authority to interpret the terms of a collective-bargaining agreement, a court may compel arbitration of a minor dispute before the authorized System Board.
 
 
 3
 "Major" disputes involve the formation of collective-bargaining agreements, and the resolution of such disputes is governed by § 6 of the Act, 45 U.S.C. §§ 156, 181.
 
 
 4
 "Representation" disputes involve defining the bargaining unit and determining the employee representative for collective bargaining. Under § 2, Ninth, of the Act, the National Mediation Board has exclusive jurisdiction over representation disputes. 45 U.S.C. §§ 152, 181.
 
 
 5
 Applicants, Western Airlines and Delta Air Lines, entered into an agreement and plan of merger on September 9, 1986. The merger agreement was approved by the United States Department of Transportation on December 11, 1986. On December 16, 1986, shareholder approval of the merger was conferred and Western Airlines became a wholly owned subsidiary of Delta. On the morning of April 1, 1987, the merger of Western Airlines with Delta was scheduled to be completed. See infra at ----.
 
 
 6
 Respondents represented various crafts or classes of employees of Western Airlines. The Air Transport Employees (ATE) was designated by the National Mediation Board as the bargaining representative for a unit of Western employees consisting of clerical, office, fleet, and passenger service employees. The International Brotherhood of Teamsters Local 2707 was the certified representative of three crafts or classes employed by Western: mechanics and related employees, stock clerks, and flight instructors. Each union's collective-bargaining agreement has a provision stating that the agreement shall be binding upon successors of the company.
 
 
 7
 Delta has substantially more employees than Western in the crafts or classes represented by the unions, and these Delta employees had no bargaining representative. Respondents filed grievances alleging that Western violated the successorship provisions of the two collective-bargaining agreements by failing to secure Delta's agreement to be bound by the collective-bargaining agreements between Western and respondent unions. Western refused to arbitrate the grievances, asserting that they necessarily involved representation issues and therefore were within the exclusive jurisdiction of the National Mediation Board.
 
 
 8
 The unions filed separate complaints in the District Court for the Central District of California, each requesting the District Court to treat the successor clause dispute as a minor dispute, and compel arbitration of the dispute by the System Adjustment Board. Both complaints were dismissed for lack of subject matter jurisdiction.
 
 
 9
 On March 17, 1987, the Court of Appeals for the Ninth Circuit entered an interim order directing arbitration of the grievances to proceed before the unions' respective System Adjustment Boards pending appeal.
 
 
 10
 At approximately 8 p.m., eastern time, March 31—little more than 12 hours before the merger was scheduled to take place—the Court of Appeals for the Ninth Circuit issued the following order:
 
 
 11
 "1. The judgments of the district court dismissing the unions' actions are reversed and the causes are remanded with instructions to enter orders compelling arbitration.
 
 
 12
 "2. Western's motion for reconsideration of our order compelling arbitration pending appeal is denied.
 
 
 13
 "3. The contemplated merger of Western Air Lines and Delta Air Lines is enjoined pending completion of arbitration proceedings or until Western and Delta file with the Clerk of this Court a stipulation that the result of the arbitration, subject to appropriate judicial review and all valid defenses, will bind the successor corporation. Upon filing of such stipulation and approval by the court, the injunction of the merger shall terminate.
 
 
 14
 * * * * *
 
 
 15
 "It is so ordered. A written opinion will be filed as soon as practicable." Application Exh. A.
 
 
 16
 The timing and substance of the Court of Appeal's order under the exigencies of this case made compliance with Rule 44.4 of this Court, requiring that a motion for a stay first be filed with the court below, both virtually impossible and legally futile. I conclude that this situation presents one of those rare, extraordinary circumstances in which request for a stay before the Court of Appeals is not required under the Rule.
 
 
 17
 I also conclude that the judgment of the Court of Appeals, reversing the District Court decisions, requiring the entry of orders compelling arbitration, and enjoining the merger, is final within the meaning of 28 U.S.C. § 2101(f). The Court of Appeals' provision for lifting the injunction upon certain stipulations of applicants does not divest the judgment of finality when, as in this case, the required stipulations, to have any significance, must bind applicants to a concession of their position on the only question before the Court of Appeals: whether the successor clause dispute is within the jurisdiction of the System Adjustment Board or the National Mediation Board.
 
 
 18
 Moreover, regardless of the finality of the judgment below, "a Circuit Justice has jurisdiction to vacate a stay where it appears that the rights of the parties to a case pending in the court of appeals, which case could and very likely would be reviewed here upon final disposition in the court of appeals, may be seriously and irreparably injured by the stay, and the Circuit Justice is of the opinion that the court of appeals is demonstrably wrong in its application of accepted standards in deciding to issue the stay." Coleman v. Paccar, Inc., 424 U.S. 1301, 1304, 96 S.Ct. 845, 847, 47 L.Ed.2d 67 (1976) (REHNQUIST, J., in chambers).
 
 
 19
 The reasoning of every other Court of Appeals that has ruled on the issue raised before the Ninth Circuit casts grave doubt on the validity of the Ninth Circuit's action in this case. The great weight of the case law supports the proposition that disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board. In International Brotherhood of Teamsters v. Texas Int'l Airlines, Inc., 717 F.2d 157 (1983), the Court of Appeals for the Fifth Circuit held that "[t]he [Railway Labor] Act commits disputes involving a determination of who is to represent airline employees in collective bargaining to the exclusive jurisdiction of the National Mediation Board." The Fifth Circuit stated that "[a] court may not entertain an action involving such a dispute even if it arises in the context of otherwise justiciable claims. . . . Moreover, a court may not grant injunctive relief maintaining the status quo if the underlying dispute is representational in nature, because to do so would necessarily have the effect, at least during the period of the injunction, of deciding the representation issue." Id., at 161. "Given the Mediation Board's undeniable sole jurisdiction over representation matters," and the practical problems of divided jurisdiction among the other dispute-resolution fora, the Fifth Circuit inferred "a congressional intention to allow that agency alone to consider the post-merger problems that arise from existing collective bargaining agreements." Id., at 164. The Court of Appeals for the Seventh Circuit treated the question of National Mediation Board jurisdiction over alleged collective-bargaining violations implicating postmerger representation as one settled by " 'the overwhelming and well-developed case law,' " and found "no reason to depart from the consistent and well-considered analysis of our colleagues in other circuits." Air Line Employees v. Republic Airlines, Inc., 798 F.2d 967, 968 (quoting Order No. 86C5239 (ND Ill. July 28, 1986)), cert. denied, 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986). See also Air Line Pilots Assn. Int'l v. Texas Int'l Airlines, Inc., 656 F.2d 16 (CA2 1981); International Assn. of Machinists v. Northeast Airlines, Inc., 536 F.2d 975, 977 (CA1), cert. denied, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1976); Brotherhood of Railway & S.S. Clerks v. United Air Lines, Inc., 325 F.2d 576 (CA6 1963), cert. dism'd, 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964). It was upon this overwhelming body of case law that the District Court for the District of Columbia relied when it considered the complaint of the Association of Flight Attendants (AFA), also arising from the Western-Delta merger. AFA's complaint, seeking an order compelling Western to submit to arbitration by the System Board of Adjustment and enjoining the merger pending completion of proceedings before the System Board, was dismissed. Association of Flight Attendants, AFL-CIO v. Western Airlines, Inc., No. 87-0040 (Feb. 20, 1987). On March 31, 1987, the Court of Appeals for the District of Columbia Circuit denied AFA's motions to compel arbitration pending appeal, and its motion for expedited appeal and decision before April 1. Association of Flight Attendants, AFL-CIO v. Western Airlines, Inc., No. 87-7040. The Ninth Circuit's divergence from this line of Court of Appeals decisions leads me to find it very likely that at least four Justices would vote to grant certiorari, and that the applicant is likely to prevail on the merits.
 
 
 20
 To appreciate the balance of the equities created by the Ninth Circuit's order, one must focus on the stipulation clause of that order. What was to be gained or lost by the applicants and respondents in this case was not the merger of Western and Delta Airlines alone but the substance of the stipulation on which that merger was conditioned by the Ninth Circuit.
 
 
 21
 The stipulation which the Ninth Circuit required from Western and Delta Airlines is subject to two interpretations. The first is a requirement that Delta and Western agree that if, after full judicial review of the jurisdictional as well as other issues raised, it is determined that the claims presented by respondents fall under the jurisdiction of the System Adjustment Boards, the successor corporation will be bound by the result of the completed arbitration process. Under this interpretation of the stipulation, the successor corporation was required to do no more than adhere to the obligations placed upon it by law, as those obligations are determined in the litigation. Those legal obligations, of course, would exist independent of any stipulation. If the stipulation would leave the applicants free to assert any of their arguments against the jurisdiction of the System Adjustment Boards, the applicants would have remained in the same position after the stipulation as they were before, and the stipulation would have served no purpose.
 
 
 22
 The other interpretation of the clause is that, in order to avoid an eleventh hour injunction of the merger, Delta and Western were required to stipulate as to the correctness of respondents' argument that this dispute did in fact fall under the jurisdiction of the System Adjustment Boards. As to the balance of equities on this interpretation of the Ninth Circuit's order, they clearly weigh in favor of the applicants. The potential harm that would be suffered by the applicants as a result of the Court of Appeals' injunction of their merger is seriously aggravated by the fact that the order issued on the very eve of the merger's consummation. For several months, the applicants have been planning to combine their large-scale, complex, interrelated, and heavily regulated operations effective April 1, 1987. That planning included the transfer, modification, and cancellation of hundreds of Western's contracts for supplies and services and equipment leases. The approval of the Federal Aviation Administration (FAA) of changes in Western's operating certificates, specifications, and training programs have been sought and received. Maintenance schedules, flight schedules, and staffing schedules have been modified in order to effect a smooth transition to a merged operation on April 1. Large numbers of Western management personnel, without whom it cannot operate as an independent entity, are to be severed effective April 1; many have presumably arranged for new employment. Delta has negotiated for transfer of Western's Mexican and Canadian routes with the respective governments of those countries. It is doubtful that these arrangements can be undone if the merger does not take place as anticipated.
 
 
 23
 Because of the operational adjustments that are already in place, the FAA has expressed doubt whether Western will be permitted to continue operations should the merger not take place, potentially stranding thousands of travelers. Employees, expecting to be transferred to new locations after April 1, have sold old homes and bought or leased new ones. Changes in pay, working conditions, and conditions of employment all have been planned for and relied upon in anticipation of the merger. Millions of dollars of advertising have been targeted toward the April 1, 1987, merger date. And the list of consequences goes on. See Application, Affidavit of Hollis Harris and Exhibit 1 thereof; Affidavit of Robert Oppenlander; Affidavit of Russell H. Heil; Affidavit of Whitley Hawkins; Affidavit of C. Julian May; Affidavit of Jason R. Archambeau. The cost of enjoining this huge undertaking only hours before its long awaited consummation is simply staggering in its magnitude, in the number of lives touched and dollars lost. To assume that enjoining of the merger would do no more than preserve the "status quo," in the face of this upheaval, would be to blink at reality. Under the second interpretation of the stipulation clause—the only interpretation under which the required stipulations would have had meaning—applicants could prevent these losses only by conceding their argument, supported by the great weight of authority, that their dispute with respondents fell under the jurisdiction of the National Mediation Board. On the other side, respondents had no entitlement to such a concession, obtained under these circumstances, from parties that had otherwise indicated their intent to continue to assert the contrary position on the jurisdictional issue. Before the Court of Appeals the unions argued that completion of the merger would moot their claims under the collective-bargaining agreement to System Board arbitration. For the reasons stated above, I doubt that respondents' claims would ultimately prevail. Moreover, preservation of respondents' claims could have been accomplished equitably by a speedier resolution of the jurisdictional issue, rather than by the inequitable last-minute foisting of a Hobson's choice on the applicants. Finally, the employees themselves are protected by Delta's assumption of the Allegheny-Mohawk Labor Protective Provisions, requiring the continuation of certain fringe benefits, displacement and dismissal allowances for up to four to five years for employees who lose their jobs or get lesser paying jobs, moving and related costs for employees required to move, integration of seniority lists, and binding arbitration of any dispute relating to the labor protective provisions. See Allegheny-Mohawk Merger Case, 59 C.A.B. 22 (1971); Heil Affidavit, ¶ 6.
 
 
 24
 Because the stipulation upon which the lifting of the injunction was conditioned appears to be either unnecessary or extremely inequitable, depending upon its interpretation, and because it appears to me likely that at least four Justices would vote to grant certiorari and that the applicants are likely to prevail on the merits, I grant the requested stay of the Court of Appeals for the Ninth Circuit's injunction and order compelling arbitration before the System Boards, pending the timely filing and subsequent disposition of a writ of certiorari in this case.