# SUPREME COURT OF THE UNITED STATES

———————

No. 13A452

———————

## PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES ET AL. *v.* GREGORY ABBOTT, ATTORNEY GENERAL OF TEXAS ET AL.

ON APPLICATION TO VACATE STAY

[November 19, 2013]

JUSTICE BREYER, with whom JUSTICE GINSBURG, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting from denial of application to vacate the stay.

In July of this year, the State of Texas passed two amendments to its abortion laws, which were to go into effect on October 29. See 2013 Texas House Bill No. 2. The amendment now at issue requires a physician performing an abortion to have admitting privileges at a hospital within 30 miles. Applicants challenged the amendments in Federal District Court, arguing (among other things) that they violate the constitutional right to have an abortion. See *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992).

The District Court held a bench trial and, on the day before the amendments were to go into effect, issued an opinion and order holding that the admitting privileges requirement is unconstitutional and permanently enjoining its enforcement. __ F. Supp. 2d __, 2013 WL 5781583 (WD Tex., Oct. 28, 2013). The District Court concluded that "admitting privileges have no rational relationship to improved patient care" and "do not rationally relate to the State's legitimate interest in protecting the unborn." *Id.,* at *5. And the court explained that, in its view, the admitting privileges requirement is unconstitutional because it

is "without a rational basis and places a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.,* at *2; see also *Gonzales* v. *Carhart*, 550 U. S. 124, 146 (2007) (A State "may not impose upon this right [to an abortion] an undue burden, which exists if a regulation's 'purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability'" (quoting *Casey*, *supra*, at 878)).

The State appealed the District Court's decision and asked the Court of Appeals for the Fifth Circuit to stay the injunction pending resolution of the appeal. The Court of Appeals granted the stay, which had the effect of allowing the admitting privileges requirement to go into force immediately. ___ F. 3d ___, 2013 WL 5857853 (Oct. 31, 2013). In deciding to issue the stay, the Fifth Circuit undertook to apply the traditional analysis, which requires a balancing of four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken* v. *Holder*, 556 U. S. 418, 426 (2009) (quoting *Hilton* v. *Braunskill*, 481 U. S. 770, 776 (1987)). The Fifth Circuit thought that the State was likely to prevail on the merits, that the injunction would irreparably injure it by preventing it from implementing its statute at least until the Fifth Circuit reached a final decision, and that the public interest merged with the State's interest in the enforcement of its law. The Fifth Circuit recognized that applicants had "made a strong showing that their interests would be harmed by staying the injunction," but it concluded that "given the State's likely success on the merits, this is not enough, standing alone, to outweigh the other factors." 2013 WL 5857853, *9.

As a practical matter, the Fifth Circuit's decision to stay

the injunction meant that abortion clinics in Texas whose physicians do not have admitting privileges at a hospital within 30 miles of the clinic were forced to cease offering abortions. And it means that women who were planning to receive abortions at those clinics were forced to go elsewhere—in some cases 100 miles or more—to obtain a safe abortion, or else not to obtain one at all. The Fifth Circuit set the appeal for expedited consideration, with oral argument to be held in January 2014 and, I assume, a decision to issue soon thereafter. See *ibid.*

Applicants, the plaintiffs in the District Court, now ask this Court to vacate the Fifth Circuit's stay, meaning that the District Court's injunction would be reinstated and those clinics that were forced to close could reopen while the Fifth Circuit receives briefing and renders its considered decision on the merits.

This Court may vacate a stay entered by a court of appeals where the case "'could and very likely would be reviewed here upon final disposition in the court of appeals,'" "'the rights of the parties . . . may be seriously and irreparably injured by the stay,'" and "'the court of appeals is demonstrably wrong in its application of accepted standards in deciding to issue the stay.'" *Western Airlines, Inc.* v. *Teamsters*, 480 U. S. 1301, 1305 (1987) (O'Connor, J., in chambers) (quoting *Coleman* v. *Paccar Inc.*, 424 U. S. 1301, 1304 (1976) (Rehnquist, J., in chambers)). For the following reasons, I believe that these conditions are satisfied here.

*First*, under the status quo that existed in Texas prior to the enactment of the admitting privileges requirement, women across the State of Texas who needed abortions had a certain level of access to clinics that would provide them. If allowed to stand, the District Court's injunction would maintain that status quo pending the decision of this case by the Court of Appeals.

*Second*, the Fifth Circuit's stay seriously disrupts that

status quo. By putting Texas' new law into immediate effect, it instantly leaves "24 counties in the Rio Grande Valley . . . with no abortion provider because those providers do not have admitting privileges and are unlikely to get them," 2013 WL 5781583, *5, and it may substantially reduce access to safe abortions elsewhere in Texas. Applicants assert that 20,000 women in Texas will be left without service. While the State denies this assertion, it provides no assurance that a significant number of women seeking abortions will not be affected, and the District Court unquestionably found that "there will be abortion clinics that will close." *Ibid.* The longer a given facility remains closed, the less likely it is ever to reopen even if the admitting privileges requirement is ultimately held unconstitutional.

*Third*, the Fifth Circuit has agreed to expedite its consideration of the challenge, minimizing the harm that the injunction, if entered in error, would do to the State and bolstering my view that it is a mistake to disrupt the status quo so seriously before the Fifth Circuit has arrived at a considered decision on the merits.

*Fourth*, the balance of harms tilts in favor of applicants. If the law is valid, then the District Court's injunction harms the State by delaying for a few months a change to the longstanding status quo. If the law is invalid, the injunction properly prevented the potential for serious physical or other harm to many women whose exercise of their constitutional right to obtain an abortion would be unduly burdened by the law. And although the injunction will ultimately be reinstated if the law is indeed invalid, the harms to the individual women whose rights it restricts while it remains in effect will be permanent.

*Fifth*, the underlying legal question—whether the new Texas statute is constitutional—is a difficult question. It is a question, I believe, that at least four Members of this Court will wish to consider irrespective of the Fifth Cir-

cuit's ultimate decision.

*Sixth*, I can find no significant "public interest" considerations beyond those I have already mentioned.

Given these considerations, in my view, the standard governing the Fifth Circuit's decision whether to stay the District Court's injunction was not satisfied, and the standard governing this Court's decision whether to vacate the Fifth Circuit's stay is satisfied. See *Nken*, 556 U. S., at 426; *Western Airlines, supra,* at 1305. I would maintain the status quo while the lower courts consider this difficult, sensitive, and controversial legal matter. Thus, I would vacate the stay, and I dissent from the Court's refusal to do so.